IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| YOSEF TESHOME | ) | CASE NO. |
| 192 Empire Drive, | ) | |
| Gahanna, Ohio 43230 | ) | JUDGE: |
|                 Plaintiff, | ) | |
| | ) | |
|               v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| THE OHIO STATE UNIVERSITY | ) | |
| FOUNDATION | ) | **JURY DEMAND ENDORSED** |
| Legal Department | ) | **HEREIN** |
| 1590 N High St Ste 500 | ) | |
| Columbus, Ohio 43201-2247 | ) | |
| | ) | |
| **Serve also:** | ) | |
| c/o Christopher Culley, | ) | |
| Statutory Agent | ) | |
| 1590 N High St Ste 500 | ) | |
| Columbus, Ohio 43201-2247 | ) | |
| | ) | |
|    -and- | ) | |
| | ) | |
| BRUCE MCPHERSON | ) | |
| c/o THE OHIO STATE UNIVERSITY | ) | |
| FOUNDATION | ) | |
| Legal Department | ) | |
| 1590 N High St Ste 500 | ) | |
| Columbus, Ohio 43201-2247 | ) | |
| | ) | |
|               Defendants. | ) | |

Plaintiff, Yosef Teshome, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES, JURISDICITION, AND VENUE**

1. Teshome is a resident of the city of Gahanna, county of Franklin, state of Ohio.

The Employee's Attorney.™ 

2. The Ohio State University Foundation ("Ohio State") is a domestic not for profit corporation with its principal place of business located at 1590 N High St Ste 500, Columbus, Ohio 43201-2247.

3. Jurisdiction is proper over Ohio State pursuant to 28 U.S.C. § 1331 in that Teshome is alleging a federal law claim arising under the Family Medical Leave Act, 29 U.S.C § 2601, *et seq*, and Title VII of the Civil Rights Act of 1964, § 701 *et seq*., as amended, 42 U.S.C.A. § 2000e *et seq*. Thus, this Court has original jurisdiction over the federal law claims asserted in this Complaint under 28 U.S.C. § 1331. Additionally, this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. McPherson is, and, at all times hereinafter mentioned, was a supervisor for Ohio State who acted directly or indirectly in the interest of Ohio State.

5. At all times relevant herein, McPherson supervised and/or controlled Teshome's employment with Ohio State, acted directly or indirectly in the interest of Ohio State in relation to its employees, and was an employer within the meaning of 29 U.S.C. § 2611(4)(A)(i)-(iii) of the Family Medical Leave Act, ("FMLA"), 29 U.S.C. § 2617, *et seq*.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Venue is properly placed in the United States District Court for the Southern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which Ohio State operates and where the material facts in this matter took place.

8. Prior to instituting this action, Teshome filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2016-01777, alleging that Ohio had discriminated against him on the basis of race discrimination, national origin discrimination, and retaliatory discrimination.



The Employee's Attorney.™

9. Teshome received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) on or about July 6, 2016.

10. The Right to Sue Letter was issued by the EEOC on June 30, 2016.

11. A true and accurate copy of the Right to Sue letter has been attached hereto as Exhibit A.

12. Teshome has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Teshome has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Teshome is a former employee of Ohio State.

15. Teshome's former name is Yosef Agared.

16. Teshome is of Ethiopian descent

17. Teshome is African American.

18. Teshome became a United States citizen in 2015.

19. Teshome changed his name from Agared to Teshome in 2015.

20. On or about May 12, 2008, Ohio State hired Teshome as Storekeeper I.

21. Teshome suffers from Attention Deficit Hyperactivity Disorder ("ADHD").

22. Teshome's ADHD regularly interferes with his ability to manage his time.

23. On or about March 4, 2014, Ohio State disciplined Teshome for exceeding the Attendance Policy.

24. Upon information and belief, at the time Teshome received the March 4, 2014 discipline, several other similarly-situated, non-Ethiopian employees with worse attendance records were not disciplined.



25. The March 4, 2014, discipline was motivated by Teshome's national origin.

26. The March 4, 2014, discipline was an adverse action against Teshome.

27. On or about October 22, 2014, Ohio State again disciplined Teshome for exceeding the Attendance Policy.

28. Upon information and belief, at the time Teshome received the October 22, 2014 discipline, several other similarly-situated, non-Ethiopian employees with worse attendance records were not disciplined.

29. The October 22, 2014, discipline was motivated by Teshome's national origin.

30. The October 22, 2014, discipline was an adverse action against Teshome.

31. Subsequent to receiving the October 22, 2014 discipline, Teshome notified Ohio State that he suffered from ADHD, and that he believed his attendance infractions could be attributed to his disability.

32. Subsequent to receiving the October 22, 2014 discipline, Teshome requested intermittent FMLA leave for his ADHD ("FMLA Request").

33. Teshome's FMLA Request was approved.

34. On or about August 11, 2015, Teshome went to the Doan HR satellite office in order to change his name in Ohio State's records.

35. Teshome carried with him a certificate of citizenship and petition of name change ("Paperwork").

36. Teshome submitted his Paperwork to Cindy Clowes, a Human Resources administrator for Ohio State.

37. Clowes became uncooperative when she saw that Teshome was an African American.

38. Clowes became uncooperative when she saw that Teshome was Ethiopian.



39. The Paperwork Teshome submitted was sufficient to accomplish Teshome's name change.

40. Clowes refused to process Teshome's name change unless he produced a driver's license.

41. Teshome was not required to produce a driver's license in order to change his name with Ohio State.

42. Clowes did not tell Teshome he would also need a social security card to change his name.

43. Clowes told Teshome that he did not have the proper documentation for his new name despite having the documentation required by the Human Resource's own policies.

44. On or about August 31, 2015, Teshome returned to the Doan HR satellite office with the same Paperwork he brought on August 11, 2015, and his driver license, in order to change his name.

45. Teshome asked student assistant Kristen Schnider if she could help him fill out an I9 Form.

46. After Teshome requested assistance, Schnider began to help him fill out the forms.

47. Schnider asked Teshome to provide a social security card with Teshome's new name.

48. Teshome informed Schnider that he did not have a new social security card as new social security cards take several weeks to arrive.

49. Teshome presented his Paperwork and Driver's License.

50. After Teshome presented his Paperwork and Driver's License to Schnider, Clowes interjected and yelled across the office "I told you last time you were here the same thing."

51. In speaking to Teshome, Clowes spoke in a mocking tone, as though Teshome did not understand the English language.

52. Teshome responded to Clowes' remarks by stating "I can comprehend English well."

53. Clowes then stated "I am not dealing with you" and immediately pressed the panic button in order to call campus security ("Panic Button").

54. Teshome was unaware that Clowes had pressed the panic button because it is silent.

The Employee's Attorney.™ 

55. The Panic Button is only intended for actual emergencies.

56. Clowes had no reason to press the Panic Button.

57. Clowes pressed the Panic Button because the mere act of an African American or an Ethiopian challenging her was enough to make Clowes fearful.

58. Specifically, Clowes' holds the discriminatory belief that African Americans and/or those from the middle east and/or Eastern Africa, such as Ethiopia, are prone to violence and/or terrorism.

59. Clowes' pressing of the Panic Button was motivated by her racial and xenophobic beliefs.

60. Lt. Wells and Lt. Batten, from Ohio State Campus Security, responded to Clowes' request via the office panic button.

61. Lt. Wells and Lt. Batten found Teshome finishing his forms with Schnider.

62. Teshome was extremely embarrassed that Clowes called campus police.

63. Clowes claims that she felt "threatened" by Teshome.

64. Clowes felt threatened because of Teshome's race.

65. Clowes felt threatened because of Teshome's national origin.

66. Upon information and belief, Clowes has never pressed the Panic Button as a result of her interactions with anyone who is not African American.

67. Upon information and belief, Clowes has never pressed the Panic Button as a result of her interactions with anyone who is not Ethiopian.

68. Clowes called Campus Security as a way to harass and intimidate Teshome.

69. Clowes' pressing the panic button was an adverse action against Teshome.

70. Clowes subsequently admitted to Lt. Wells and Lt. Batten that Teshome had not made any threats.

The Employee's Attorney.™ 

71. Teshome was not charged with any crime or wrongdoing as a result of his conduct on August 31, 2015.

72. In a subsequent investigation, Associate Director of Security, Steven Wollenberg and Assistant Director of Security, Ryan Westenbarger interviewed Clowes, Schnider, and other witnesses to the August 31, 2015 incident.

73. Clowes, Schnider, and the other witnesses all stated that Teshome had not cussed, acted physically aggressive, or used aggressive body language, and further, that Teshome made no threats or implied threats.

74. Paola Aguilar Villanueva, a nutrition services employee and impartial witness to the August 31, 2015 incident between Clowes and Teshome, provided Ohio State with a written statement that while Teshome useda strong voice, he was not yelling and or attempting intimidate Clowes.

75. Villanueva also witnessed how Clowes refused to take Teshome's Documentation Paperwork until after security showed up and she was forced to accept the same paper work that he had presented on August 11, 2015.

76. Clowes did in fact use the same Paperwork that Teshome had provided on the August 11, 2015 to complete his name change process.

77. Clowes' ability to process Teshome's Paperwork after adamantly refusing to accept it demonstrates that her original refusal to accept the paperwork was merely intended to harass and annoy Teshome.

78. Clowes wanted to harass and annoy Teshome because of his race and/or national origin.



79. During the months of August and September, 2015, Teshome complained that he was being harassed on the basis of his race and national origin by two other Ohio State supervisors, Brent Jones and Brian Jones.

80. On or about September 14, 2015, Teshome reported Clowes' discriminatory behavior to McPherson ("Teshome's Discrimination Complaint").

81. Teshome specifically complained that he believed Clowes had "profiled" him because of his race and/or national origin.

82. Based on Ohio State policies, Teshome's Discrimination Complaint was considered to be significant workplace incident.

83. Defendants have a policy and practice of fully investigating a significant workplace incident.

84. Defendants have a policy and practice of getting written statements from all participants to a significant workplace incident.

85. Defendants have a policy and practice of getting written statements from all witnesses to a significant workplace incident.

86. Defendants violated their policy and practice of fully investigating a significant workplace incident regarding Teshome's Discrimination Complaint.

87. Defendants violated their policy and practice of getting written statements from all participants to a significant workplace incident regarding Teshome's Discrimination Complaint.

88. Defendants violated their policy and practice of getting written statements from all witnesses to a significant workplace incident regarding Teshome's Discrimination Complaint.

89. Defendants' failure to follow their policy and practice of fully investigating a significant workplace incident was an adverse action against Teshome.



90. Defendants' failure to follow their policy and practice of getting written statements from all participants to a significant workplace incident was an adverse action against Teshome.

91. Defendants' failure to follow their policy and practice of getting written statements from all witnesses to a significant workplace incident was an adverse action against Teshome.

92. Ohio State disregarded Teshome's Discrimination Complaint and failed to take any action with respect to Clowes' discriminatory treatment towards Teshome on August 31, 2015.

93. Clowes was not given a verbal warning as a result of her discriminatory treatment of Teshome on August 11, 2015 and August 31, 2015.

94. Clowes was not given a written warning as a result of her discriminatory treatment of Teshome on August 11, 2015 and August 31, 2015.

95. Clowes' employment at Ohio State was not suspended as a result of her discriminatory treatment of Teshome on August 11, 2015 and August 31, 2015.

96. Clowes' employment at Ohio State was not terminated as a result of her discriminatory treatment of Teshome on August 11, 2015 and August 31, 2015.

97. On or about October 14, 2015, Ohio State terminated Teshome's employment

98. Ohio State claimed that Teshome was being terminated because of his attendance policy violations from 2014, and because of the August 31, 2015 interaction with Clowes.

99. In reality, Teshome was terminated because of his race.

100. In reality, Teshome was terminated because of his national origin.

101. In reality, Teshome was terminated in retaliation for reporting race discrimination and national origin discrimination.

102. In reality, Teshome was terminated because he had exercised his rights under the FMLA.



103. Upon information and belief, Defendants permitted similarly-situated, non-Ethiopian employees to retain their employment despite having attendance records that were similar to or worse than Teshome's.

104. Upon information and belief, Defendants permitted similarly-situated, non-African American employees to retain their employment despite having attendance records that were similar to or worse than Teshome's.

105. Upon information and belief, Defendants permitted similarly-situated employees who had not complained about discrimination or harassment at Ohio State to retain their employment despite having attendance records that were similar to or worse than Teshome's.

106. Upon information and belief, Defendants permitted similarly-situated employees who had not taken FMLA leave to retain their employment despite having attendance records that were similar to or worse than Teshome's.

107. As a result of being constantly harassed and insulted on the basis national origin during his employment at Ohio State, and being wrongfully terminated from Ohio State, Teshome has suffered severe emotional distress, anxiety, and depression.

### COUNT I: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Against Ohio State Only)**

108. Teshome restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

109. Throughout his employment, Teshome was fully competent to perform his essential job duties at Ohio State.

110. Teshome is a member of a statutorily-protected class under 42 U.S.C. § 2000e-2 *et sq*.



111. Ohio State treated Teshome differently than other similarly situated employees based on his national origin.

112. Ohio State violated 42 U.S.C. § 2000e-2 *et sq*.by discriminating against Teshome due to his national origin.

113. Teshome's national origin was a determinative factor in Ohio State's decisions to take multiple adverse actions against Teshome.

114. As a direct and proximate result of Ohio State's conduct, Teshome has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: WRONGFUL TERMINATION BASED ON NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Against Ohio State Only)**

115. Teshome restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. Teshome is a member of a statutorily-protected class under 42 U.S.C. § 2000e-2 *et sq*.

117. Ohio State terminated Teshome from his employment without just cause.

118. Ohio State terminated Teshome based on his national origin.

119. Ohio State violated 42 U.S.C. § 2000e-2 *et sq* when they terminated Teshome.

120. As a direct and proximate result of Ohio State's conduct, Teshome has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.



### COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Against Ohio State Only)**

121. Teshome restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

122. Throughout his employment, Teshome was fully competent to perform his essential job duties at Ohio State.

123. Teshome is a member of a statutorily-protected class under 42 U.S.C. § 2000e-2 *et sq*.

124. Ohio State treated Teshome differently than other similarly situated employees based on his race.

125. Ohio State violated 42 U.S.C. § 2000e-2 *et sq*.by discriminating against Teshome due to his race.

126. Teshome's race was a motivating factor in Ohio State's decisions to take multiple adverse actions against Teshome.

127. As a direct and proximate result of Ohio State's conduct, Teshome has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: WRONGFUL TERMINATION BASED ON RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C.A § 2000e-2.
**(Against Ohio State Only)**

128. Teshome restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. On October 14, 2015, Defendants terminated Teshome without just cause.

130. Ohio State terminated Teshome based on his race

131. Ohio State violated 42 U.S.C. § 2000e-2 *et sq* when they terminated Teshome.



132. As a direct and proximate cause of Defendants' conduct, Teshome has suffered and will continue to suffer damages

### COUNT V:  RETALIATORY DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Against Ohio State Only)

133. Teshome restates each and every prior paragraph of this complaint, as if it were fully restated herein.

134. As a result of the Clowes' discriminatory conduct described above, Teshome complained about the national origin discrimination and race discrimination he was experiencing to McPherson on September 14, 2015.

135. Subsequent to Teshome reporting discrimination, he was terminated from Ohio State.

136. Defendant's actions were retaliatory in nature based on Teshome 's opposition to the unlawful discriminatory conduct.

137. Pursuant 42 U.S.C. § 2000e-3 *et. sq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has made a charge of discrimination.

138. As a direct and proximate result of Ohio State's retaliatory discrimination against and termination of Teshome he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VI: RETALIATORY DISCHARGE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
### (Against all Defendants)

139. Teshome restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



140. Subsequent to Teshome' exercising of his rights under the FMLA, Defendants retaliated against him.

141. Defendants last retaliated against Teshome on October 14, 2015, when he was terminated.

142. Defendants willfully retaliated and discriminated against Teshome in violation of 29 U.S.C. § 2615(a).

143. As a direct and proximate cause of Defendants' conduct, Teshome suffered and will continue to suffer damages.

144. As a direct and proximate cause of Defendants' conduct, Teshome is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Yosef Teshome demands from Defendants the following:

(a) Issue a permanent injunction:

    (i) Requiring Ohio State to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and



    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Ohio State to restore Teshome to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Teshome for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Teshome claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        *s/ Chris P. Wido*
        Chris P. Wido (0090441)
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, Ohio 44122
        Phone: (216) 291-4744
        Fax:   (216) 291-5744
        Email: chris.wido@spitzlawfirm.com

        *Attorney for Plaintiff Yosef Teshome*



## **JURY DEMAND**

Plaintiff Yosef Teshome demands a trial by jury by the maximum number of jurors permitted.

*s/ Chris P. Wido*
Chris P. Wido (0090441)

